**Thomas W. HAMMOND, III, et al., Plaintiffs,**

v.

**Richard E. MARX et al., Defendants.**

**Civ. No. 2045 ND.**

United States District Court, D. Maine, N. D.

Dec. 31, 1975.

854

Thomas W. Hammond, III, pro se.

Martin L. Wilk, Asst. Atty. Gen., Augusta, Me., John E. McKay and Bernard J. Kubetz, Bangor, Me., for defendants.

Before COFFIN, Chief Circuit Judge, and GIGNOUX and BOWNES, District Judges.

## OPINION

GIGNOUX, District Judge.

This is an action for a declaratory judgment, injunctive relief and damages challenging the constitutional validity of a Maine statute setting a minimum age for admission to the first grade in the public schools. 20 Me.Rev.Stat.Ann. § 859 (1975 Supp.). The action is brought under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985. Jurisdiction is predicated on 28 U.S.C. § 1343(3) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. Plaintiffs, a father and his minor son, are residents of Belfast, Maine. Defendants are the Superintendent of Schools of Maine School Administrative District No. 34 and the Principal of the Grover Anderson Elementary School, of Belfast. The Maine State Board of Education has been granted leave to intervene as a defendant. The case has been certified as a class action under Fed.R.Civ.P. 23(b)(2), and this three-judge court convened pursuant to 28 U.S.C. §§ 2281, 2284. The cause is before the Court on a stipulated record, briefs and oral argument.

The minor plaintiff, Gregory T. Hammond, was born December 19, 1967. In August 1973 he sought enrollment in the first grade at the Grover Anderson School but was refused on the ground that he failed to meet the minimum age requirement established by 20 Me.Rev. Stat.Ann. § 859. That section provides, in pertinent part:

In the public schools of the State only those children who are or will become 6 years of age on or before October 15th of the school year shall be admitted to grade one.[1]

The minor plaintiff fell short of this deadline by 65 days. His father, plaintiff Thomas W. Hammond, III, contends his son is entitled to be administered tests for the purpose of evaluating his readiness for the first grade and to be admitted if these tests show him to be qualified to do so. The father maintains that his son is precocious and that if his entry to the first grade is postponed he will be condemned to begin his education at a level beneath his abilities, with a resulting significant danger of loss of interest in the learning process and hindrance of his future educational progress. Plaintiffs assert that the minimum age requirement of Section 859 violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

At the threshold, plaintiffs are met with two arguments challenging the jurisdiction of this Court. Defendants contend, first, that the Court lacks jurisdiction because the right at issue, public education, is not a right secured by the United States Constitution. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Since entitlement to a public education is a right grounded only in state law, defendants argue, limitations on this right are not subject to scrutiny by a federal court. It is well recognized, however, that state laws defining eligibility for a "statutory entitlement" are subject to the requirement of the Fourteenth Amendment that eligibility not be limited in any way that works an invidious discrimination or constitutes a denial of due process. *See, e. g., Vlandis v. Kline,* 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973); *Dandridge v. Williams,* 397 U.S. 471, 483, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

Second, defendants contend that the Court should abstain from considering the constitutional challenge to Section 859, pending construction of that statute by the State courts. *See Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Abstention is inappropriate, however, where, as in the present case, plaintiffs have asserted no state grounds

---

1. Section 859 similarly provides that a child must be five years of age on or before October 15 in order to enter the kindergarten.

for relief and "there is no ambiguity in the [challenged] state statute." *Wisconsin v. Constantineau,* 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971).

■■■ We turn to the merits. Plaintiffs' equal protection claim is that Section 859 works an invidious discrimination because, solely on account of his age, it places the minor plaintiff in the classification of children ineligible to enter the first grade of the public schools. Neither of the circumstances requiring that a statute be supported by a compelling state interest is present here: a public education is not a "fundamental right," *San Antonio Independent School District v. Rodriguez, supra* 411 U.S. at 37, 93 S.Ct. 1278; nor does classification according to age constitute a "suspect classification." *McIlvaine v. Pennsylvania,* 415 U.S. 986, 94 S.Ct. 1583, 39 L.Ed.2d 884 (1974), *dismissing appeal for want of a substantial federal question* 454 Pa. 129, 309 A.2d 801 (1973); *see Rubino v. Ghezzi,* 512 F.2d 431, 433–34 (2d Cir. 1975) (per curiam), *cert. denied,* 423 U.S. 891, 96 S.Ct. 187, 46 L.Ed.2d 122 (1975); *Weisbrod v. Lynn,* 383 F.Supp. 933 (D.D.C.1974), *aff'd mem.,* 420 U.S. 940, 95 S.Ct. 1319, 43 L.Ed.2d 420 (1975). The appropriate test of plaintiffs' equal protection claim is, therefore, whether a reasonable basis exists for the classification drawn by Section 859. *Dandridge v. Williams, supra* 397 U.S. at 483–87, 90 S.Ct. 1153.

Statutes regulating public education fall within the area of economic and social welfare legislation, where the courts are most hesitant to interfere with legislative judgments. *See San Antonio Independent School District v. Rodriguez, supra* 411 U.S. at 42, 93 S.Ct. 1278. On this point the Supreme Court has spoken

emphatically, *Dandridge v. Williams, supra* 397 U.S. at 485, 90 S.Ct. at 1161:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78 [31 S.Ct. 337, 340, 55 L.Ed. 369]. "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago,* 228 U.S. 61, 69–70 [33 S.Ct. 441, 443, 57 L.Ed. 730]. "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 426 [81 S.Ct. 1101, 1105, 6 L.Ed.2d 393].

Applying this standard, Section 859 does not deny equal protection.

The record discloses that in 1966, Section 859 was the subject of a study funded by the State Department of Education and prepared by a committee of educators. The results of that study were received in evidence in the present case. State Committee on School Entrance Age, Ready or Not—Here He Comes (Title V ESEA Project) (1966). In a series of tests, the committee determined that a significant correlation exists between chronological age and school readiness and that very few underage children are in fact ready to begin school.[2] The committee found also that, in 1966, the cost

2. The Committee found that readiness to enter school depends upon several factors: "mental ability, social maturity, emotional maturity and physical maturity." In one study, tests designed to measure school readiness were administered to kindergarten and first grade students in the Brunswick school system. The results indicated that all of the oldest students in the class (those whose birthdays fell between October 15 and December 31) were ready for school, but that approximately 80% of the youngest (those born between July 1 and October 15) were not yet ready. In another study, a series of developmental tests were administered to students who were too young to be admitted to kindergarten but only marginally so, all having been born between October 15 and January 1 of the school year. Of the 122 students tested, only three were found ready to begin kindergarten.

of administering tests of school readiness was $70 per child, that there was a shortage of qualified examiners, and that the reliability of available tests of school readiness was not clearly established. In light of these considerations, the committee concluded that administration of school readiness tests to all preschool children would be an unjustifiable expense and recommended that the minimum age requirement of Section 859 be retained.

The committee report indicates that the six-year minimum age requirement reasonably reflects the readiness of children for first grade, while avoiding considerable expense to the State. The allocation of limited public education funds is a matter for the sound judgment of the legislature; and where, as here, a statute prescribes on a generalized basis a reasonably accurate and practical method of ensuring the readiness of children for first grade, it is not for this Court to substitute its judgment for that of the legislature. See San Antonio Independent School District v. Rodriguez, supra 411 U.S. at 42, 93 S.Ct. 1278; Dandridge v. Williams, supra 397 U.S. at 487, 90 S.Ct. 1153.[3]

■ Plaintiffs' due process claim is equally without merit. They argue that, by creating a conclusive presumption that a child who has not reached age six by October 15 of the school year is not ready for the first grade, a fact which is not necessarily so, Section 859 violates the "irrebuttable presumption" doctrine enunciated by the Supreme Court's decisions in Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); United States Department of Agriculture v. Murry, 413 U.S. 508 (1973); Vlandis v. Kline, supra; and Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). But in the area of economic and social welfare legislation, such as that involved in the present case, the standards of review under the Due Process Clause are essentially the same as those set out in Rodriguez and Dandridge as the standards for review under the Equal Protection Clause. The Supreme Court has spoken definitively on this point only last term in Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), upholding the duration-of-relationship requirement for survivor's insurance benefits under the Social Security Act. The Court distinguished its earlier decisions invoking the "irrebuttable presumption" doctrine, 422 U.S. at 767–74, 95 S.Ct. 2457, and concluded, id. at 784–85, 95 S.Ct. at 2476:

The administrative difficulties of individual eligibility determinations are without doubt matters which Congress may consider when determining whether to rely on rules which sweep more broadly than the evils with which they seek to deal. In this sense, the duration-of-relationship requirement represents not merely a substantive policy determination that benefits should be awarded only on the basis of genuine marital relationships, but also a substantive policy determination that limited resources would not be well spent in making individual determinations. It is an expression of Congress' policy choice that the Social Security system, and its millions of beneficiaries, would be best served by a prophylactic rule . . . . .

The Constitution does not preclude such policy choices as a price for conducting programs for the distribution of social insurance benefits. Cf. Geduldig v. Aiello, 417 U.S. [484], at 496 [94 S.Ct. 2485, at 2491–2492, 41 L.Ed.2d 256]. . . . There is thus no basis for our requiring individualized determinations when Congress can rationally conclude not only that generalized rules are appropriate to its purposes and concerns, but also that the difficulties of individual determinations outweigh the marginal incre-

---

3. In view of this conclusion, we need not consider defendants' further argument that Section 859 serves a secondary administrative purpose by aiding school officials in predicting the number of students that will enter a school system in a given year.

ments in the precise effectuation of congressional concern which they might be expected to produce.

In the present case, as in *Weinberger,* the challenged statute sets an objective and inexpensive standard which yields results reasonably approximating those that would be rendered by individual determinations. The use of such a standard is rationally related to the legitimate State purpose of providing public education at reasonable cost. It does not offend due process. *Weinberger v. Salfi, supra,* 422 U.S. at 774, 95 S.Ct. 2457.

For the foregoing reasons, the Court concludes that 20 Me.Rev.Stat.Ann. § 859 violates neither the Equal Protection Clause nor the Due Process Clause of the Fourteenth Amendment. Accordingly, judgment will be entered dismissing the complaint, with prejudice.

It is so ordered.