OHIO EX REL. EATON v. PRICE, CHIEF OF POLICE.

No. 699. Decided June 8, 1959.

*J. Harvey Crow* for appellant.

*Charles S. Rhyne* and *Joseph P. Duffy* for appellee.

PER CURIAM.

Probable jurisdiction is noted.

MR. JUSTICE BRENNAN, who voted to note probable jurisdiction, filed a separate memorandum.

MR. JUSTICE FRANKFURTER, MR. JUSTICE CLARK, MR. JUSTICE HARLAN, and MR. JUSTICE WHITTAKER, who voted against noting probable jurisdiction, filed a separate memorandum.

MR. JUSTICE CLARK, who voted against noting probable jurisdiction, filed a separate memorandum.

MR. JUSTICE STEWART took no part in the consideration or decision of this application.

MR. JUSTICE BRENNAN.

The Court's practice, when considering a jurisdictional statement whereby a litigant attempts to invoke the Court's jurisdiction on appeal, is quite similar to its well-known one on applications for writs of certiorari. That

is, if four Justices or more are of opinion that the ques-
tions presented by the appeal should be fully briefed and
argued orally, an order noting probable jurisdiction or
postponing further consideration of the jurisdictional
questions to a hearing on the merits is entered. Even
though this action is taken on the votes of only a minority
of four of the Justices, the Court then approaches plenary
consideration of the case anew as a Court; votes pre-
viously cast in Conference that the judgment of the court
appealed from be summarily affirmed, or that the appeal
be dismissed for want of a substantial federal question,
do not conclude the Justices casting them, and every
member of the Court brings to the ultimate disposition
of the case his judgment based on the full briefs and the
oral arguments. Because of this, disagreeing Justices do
not ordinarily make a public notation, when an order
setting an appeal for argument is entered, that they would
have summarily affirmed the judgment below, or have
dismissed the appeal from it for want of a substantial fed-
eral question. Research has not disclosed any instance
of such notations until today.[1]

The reasons for such forbearance are obvious. Votes
to affirm summarily, and to dismiss for want of a substan-
tial federal question, it hardly needs comment, are votes
on the merits of a case, and public expression of views on
the merits of a case by a Justice before argument and deci-

---

[1] Likewise, dissents from orders granting certiorari are ordinarily
not publicly noted, even though the grant or denial of certiorari,
as we have often said, expresses no intimation as to the merits of a
case. The sole exception found appears to be *Youngstown Sheet &
Tube Co.* v. *Sawyer,* 343 U. S. 937, where the extraordinary power
to grant certiorari before judgment in the Court of Appeals was
exercised, and two Justices expressed their view that judgment in
that court should have been obtained before this Court reviewed the
case. Of course, in these circumstances, the notation could not
possibly have implied or have been taken to imply any view of the
case on the merits.

sion may well be misunderstood; the usual practice in judicial adjudication in this country, where hearings are held, is that judgment follow, and not precede them. Public respect for the judiciary might well suffer if any basis were given for an assumption, however wrong in fact, that this were not so. Thus, the practice of not noting dissents from such orders has been followed, regardless of how strongly Justices may have felt as to the merits of a case or how clearly they have thought decision in it controlled by past precedent.[2] A precedent which appears to some Justices, upon the preliminary consideration given a jurisdictional statement, to be completely controlling may not appear to be so to other Justices. Plenary consideration can change views strongly held, and on close, reflective analysis precedents may appear inapplicable to varying fact situations. I believe that this approach will obtain in this case despite the unusual notation made today by four of my colleagues.

Mr. Justice Frankfurter, Mr. Justice Clark, Mr. Justice Harlan and Mr. Justice Whittaker are of the view that this case is controlled by, and should be affirmed on the authority of, *Frank* v. *Maryland,* 359 U. S. 360.

The *Frank* case was decided on May 4. Application to review this case came before us within two weeks of the *Frank* decision. Since we deem the decision in the Maryland case to be completely controlling upon the Ohio decision, we are of the opinion that it would manifest

---

[2] Notation of dissent from a denial of certiorari, or from a summary disposition of an appeal, is a completely different matter. Such notations occur with some frequency and I have made them myself. They are expressions of a Justice's view that a case should be heard when the Court decides not to have a hearing. Obviously such notations do not tend to foreclose or embarrass consideration of the case when it is later heard, since by definition it is not to be heard.

disrespect by the Court for its own process to indicate its willingness to create an opportunity to overrule a case decided only a fortnight ago after thorough discussion at the bar and in the briefs and after the weightiest deliberation within the Court.

MR. JUSTICE CLARK.

This case cannot be considered in isolation. In his jurisdictional statement filed February 12, 1959, appellant stated that No. 278, *Frank* v. *Maryland,* "is similar to the facts in this case at bar and involves the same constitutional questions," thus raising "substantially the same problems presented by this appeal." We, therefore, held this case awaiting the decision in No. 278, *Frank* v. *Maryland.* It was decided May 4, 1959, by a 5–4 vote. 359 U. S. 360. Thereafter this case was again considered and Brother STEWART, who was with the majority in *Frank* recused himself because the case came from Ohio's Supreme Court, where his father then served. After a study of the two cases I agreed with appellant that this case was "similar to the facts," involved the same constitutional questions and raised "substantially the same problems" as the *Frank* case. In fact, as presented here, the cases appeared to be on all fours, except that the penalty provision in Maryland's Act is $20, while that of Ohio's law is a maximum of $200, or a jail sentence not exceeding 30 days. I therefore voted to affirm. My brothers in the majority in *Frank* voted likewise. However, the four dissenters in *Frank* voted to note probable jurisdiction and bring the case on for argument. The result, for all practical purposes, is a reconsideration of the constitutional question decided in *Frank* by a full Court. This flies in the face of the real purpose, as well as the intended effect, of our Rule 58 which permits rehearings only "at the instance of a justice who concurred in the judgment or decision . . . ." It likewise is, in my

view, very poor judicial administration, especially since *Frank* was decided less than four weeks ago and only an eight-man Court can sit to review the question decided there.

Believing that the Bar will be confused by this action today, which beyond doubt will be characterized as a reconsideration of the *Frank* holding, I have noted my adherence to *Frank*. Otherwise my silence would be construed as acquiescence in a reconsideration of that case. While I have followed a policy of not noting my vote in Conference, except on the merits, our reports are full of such notations.